THE STATE, EX REL. EUVERARD, *v.* MILLER, INSPECTOR.

(No. 218—Decided December 20, 1954.)

*Mr George H. Elliott* and *Mr. Clinton D. Boyd, Jr.,* for relator.

*Mr. Marvin E. Young,* for respondent.

HILDEBRANT, J. By an original petition in mandamus, containing two causes of action, relator seeks to compel the issuance of a building permit by the Franklin Township Zoning Inspector for the erection of a gasoline and oil service station on the premises of relator, located in Franklin Township, Warren County, Ohio, and consisting of a corner lot at the intersection of U. S. Route 25 and Coles Road in Warren County.

The cause is presented to this court upon the pleadings and an agreed statement of facts, set forth in full herein as follows:

"The parties to this action by their counsel duly authorized, hereby stipulate and agree that the following facts are true; that the following are all the material facts involved in this controversy and that neither party hereto will offer evidence tending to vary the same:

"1. Relator is the owner in fee simple of the real estate described in the petition.

"2. Relator acquired title to such real estate on April 16, 1952, subject to the following provision, duly recorded in the office of the Warren County Recorder:

" '(1) All or any part of said lots may be used for business or dwelling purposes.'

"3. Said real estate is located at the intersection of U. S. Route 25 and Coles Road, in Franklin Township, Warren County, Ohio. Said intersection lies approximately 3 miles south of the city of Franklin and approximately 1.14 miles east of the city of Middletown.

"4. U. S. Route 25 is a major arterial north-south highway of the United States, heavily traveled by interstate and intrastate commercial and private vehicles. Traffic at the point where relator's property abuts on U. S. Route 25 is especially heavy, as such

point lies approximately 25 miles south of the metro-politan area of Dayton, Ohio, and approximately 35 miles north of the metropolitan area of Cincinnati, Ohio. U. S. Route No. 25 is one [of] the major commercial highways of the United States.

"5. Coles Road is a heavily traveled road, the same being an extension of the primary east-west thoroughfare of the city of Middletown.

"6. Immediately adjacent to relator's real estate, and fronting on U. S. Route No. 25, a grocery store is located; directly across U. S. Route No. 25 and facing the property of relator, a gasoline and oil service station which also sells groceries and meats is situated; diagonally across said intersection a restaurant and truck stop is located. All of said commercial establishments are currently in operation.

"7. Relator's property, being located at a heavily traveled intersection and in the midst of commercial establishments, has little suitability for residence purposes, but is very suitable for business purposes.

"8. The Board of Township Trustees of Franklin Township, Warren County, Ohio, pursuant to the provisions of Chapter 519, Revised Code, adopted a resolution providing for zoning regulations for Franklin Township, Warren County, Ohio, on August 27, 1953; such zoning resolution was approved by the electors residing in the unincorporated areas of said township at the general election held November 3, 1953, and such approval was certified by the Board of Elections of Warren County, Ohio, on November 12, 1953. Said zoning regulations are now in full force and effect and designated as the Franklin Township, Warren County, Ohio, Zoning Code. An accurate copy of said zoning code is attached to the petition herein and marked 'Exhibit.'

"9. The respondent herein, Marshall Miller, is the

Franklin Township Zoning Inspector, having been duly appointed as such by the Board of Township Trustees of Franklin Township pursuant to the said zoning code.

"10. Pursuant to said zoning code, the entire unincorporated area of Franklin Township, with the sole exception of the land abutting on U. S. Route No. 25 north of the city of Franklin for a distance of approximately 2-1/4 miles, was zoned 'Rural Residence A.'

"11. The reason the entire township, with the lone exception set out in item 10 hereof, was zoned for residence purposes only was that it was the opinion of the Franklin Township Zoning Commission and the Board of Trustees of Franklin Township that good policy indicated strict zoning throughout the township, the zoning plan to be amended to include commercial establishments as each case arose.

"12. Subsequent to the adoption of the said zoning code, relator made application to the Franklin Township Zoning Commission, requesting that, under the provisions of Chapter 519, Revised Code, the zoning plan be amended so that his property could be used for business purposes. On January 11, 1954, the Franklin Township Zoning Commission granted relator's application and rezoned his said real estate for business 'B.' A public hearing on the proposed rezoning of relator's property was held on February 22, 1954, and on February 25, 1954, the Board of Township Trustees of Franklin Township unanimously adopted a resolution confirming the action of the Township Zoning Commission and amended the zoning plan so that the property of relator be zoned for business 'B.'

"13. Within 30 days after the adoption of the said amendment by the Board of Township Trustees, a petition was presented to the Board of Township

Trustees under the provisions of Section 519.12, Revised Code, signed by voters residing in the unincorporated area of said township equal to not less than eight per cent of the total vote cast in such area for all candidates for governor in the last gubernatorial election, requesting that said amendment be submitted to the electors residing in the unincorporated area of Franklin Township, Warren County, Ohio, for approval or rejection at the next primary or general election.

"14. Pursuant to the provisions of the said Section 519.12, Revised Code, the said amendment to the zoning plan was submitted to the voters residing in the unincorporated areas of Franklin Township at the primary election held May 4, 1954.

"15. The unincorporated area of Franklin Township, Warren County, Ohio, includes approximately 33 square miles.

"16. At the primary election of May 4, 1954, the amendment to the zoning plan, rezoning relator's property for business uses, was rejected and the action of the Franklin Township Zoning Commission and the Board of Trustees of Franklin Township, was thereby overruled.

"17. On August 17, 1954, relator made written application in accord with the provisions of the said zoning code to the respondent, as Franklin Township Zoning Inspector, for a permit to erect a gasoline and oil service station on lots numbered one (1) and two (2), East Plains Subdivision, Warren County, Ohio. The respondent refused to issue such building permit for the sole reason that relator's said lots are zoned 'Rural Residence A' under the Franklin Township Zoning Code."

In the comprehensive and helpful brief of relator, the questions presented are stated to be:

"First cause of action:

"Is the Franklin Township Zoning Code, in so far as it restricts relator's land to residential uses only, an improper exercise of the police power because such restriction bears no reasonable relationship to the public health, safety, morals or general welfare?

"Second cause of action:

"Does that part of Section 519.12, Revised Code, which provides for the submission of amendments to the township zoning plan to a vote of the electors residing in the unincorporated areas of such township, constitute an unlawful delegation of legislative authority?"

The law of zoning has developed rapidly from its comparatively recent origin until now certain well defined principles have become fixed in the law to guide the courts in their consideration of current zoning cases.

To reiterate those fixed principles applicable here in the language of this court would serve only to unduly extend this opinion. We, therefore, call attention to the applicable principles dispositive of this case, as set forth in the following citations, to wit:

"All zoning laws and regulations must find their justification in some aspect of the police power, asserted for the public welfare. The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delineation. It varies with circumstances and conditions. But it may be stated as a well-settled general rule that before the court will declare a zoning ordinance invalid, it must clearly appear that it has no substantial relation to the public health, safety, or morals, or to the general welfare. The converse of this proposition is equally true, and a zoning ordinance will be declared invalid where it has no relation to public health,

safety, or morals, or to the general welfare. Thus, the inclusion of private land in a residential district under a zoning ordinance, with the resulting inhibition of its use for business'and industrial buildings, to the serious damage of the owner, violates the Fourteenth Amendment of the United States Constitution if the health, safety, convenience, or general welfare of the part of the city affected will not be promoted thereby.'' 42 Ohio Jurisprudence 812, Section 13.

This Court held in *Mehl v. Stegner, Dir. of Dept. of Bldgs.*, 38 Ohio App., 416, 175 N. E., 712, as stated in the syllabus: ''The inclusion of private land in a residential district under a zoning ordinance, with resulting inhibition of its use for business and industrial buildings to the serious damage of the owner, violates the Fourteenth Amendment of the United States Constitution, if the health, safety, convenience or general welfare of the part of the city affected will not be promoted thereby.''

In 42 Ohio Jurisprudence, 813, Section 14, it is stated:

''It is well settled that the power to enact zoning regulations cannot be exercised in an arbitrary, unreasonable, or unjustifiable manner.''

In *Nectow v. City of Cambridge*, 277 U. S., 183, 72 L. Ed., 842, 48 S. Ct., 447, the syllabus reads as follows:

''The inclusion of private land in a residential district under a zoning ordinance, with resulting inhibition of its use for business and industrial buildings to the serious damage of the owner, violates the Fourteenth Amendment, if the health, safety, convenience or general welfare of the part of the city affected will not be promoted thereby.''

In the landmark case of *Village of Euclid v. Ambler Realty Co.*, 272 U. S. 365, 71 L. Ed. 303, 47 S. Ct., 114,

54 A. L. R., 1016, it is stated in the third paragraph of the syllabus:

"The question whether the power exists to forbid the erection of a building of a particular kind or for a particular use, like the question whether a particular thing is a nuisance, is to be determined by considering the building or the thing, not abstractly but in connection with the circumstances and the locality."

And, at page 395, it is stated:

"If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

Obviously, the converse of that statement is likewise true.

In connection with the question of reasonableness, 58 American Jurisprudence, 953, Section 21, states:

"In considering the validity of zoning laws, the courts must determine whether they are arbitrary or unreasonable in their conception or application, since the zoning power does not extend to unreasonable or arbitrary intermeddling with the private ownership of property."

Taking into account the character of this location and the uses of the real estate adjacent, immediately and diagonally across therefrom, and the natural development thereof, this court has no difficulty in finding that relator's real estate, situated as it is on the heavily traveled thoroughfares, has little suitability for residential use, but rather is a prime business

site, so that the zoning thereof as residence "A" has no tendency to promote the public health, safety, morals, convenience, or general welfare, and bears no reasonable relation thereto.

We, therefore, find that the application of the zoning regulation in question here as applied to relator's real estate is arbitrary, unreasonable, and beyond the zoning power.

In view of the foregoing, this court finds it unnecessary to consider the second cause of action.

A writ of mandamus may issue, requiring respondent to issue the permit upon compliance by relator with the established rules and regulations.

*Writ allowed.*

MATTHEWS, P. J., and ROSS, J., concur.