**STATE, ex rel. ROSENTHAL, Relators, v. BEDFORD (City) et, Respondent.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23830. Decided June 6, 1956.

426

Roudebush, Adrion, Sanborn, Brown & Corlett, Allen N. Corlett, of Counsel, for relators.

Christopher, Dorer, Yoder & Corlett, Lester L. Yoder, Law Director, for respondents.

## OPINION

By SKEEL, J:

This is an original action in this Court in which the Relators seek a writ of mandamus to compel the City of Bedford to issue a building permit for the erection of a gasoline service station on the Relators' land located at the northeast corner of Union Street with Northfield Road in the City of Bedford.

The case is presented on stipulations of fact. The Rosenthal Outdoor Advertising Company acquired two contiguous parcels of land on the north side of Union Street directly north of the northerly end of Northfield Road as then shown by the County Maps, Northfield Road coming to an end at said intersection.

This property was transferred to Harry and Dora Rosenthal by the Advertising Corporation (which Corporation was wholly owned by the Rosenthals) on April 21, 1949. The title of these parcels had been in the Corporation since 1925.

The Advertising Corporation maintained a sign board on the most westerly and larger of the two parcels referred to in the stipulations of fact as Parcel No. 1, until it collapsed in 1936, and since then this parcel, except that part taken for the Northfield Road extension, has been unused and vacant. Parcel No. 1, now containing 15,818 square feet, does not now have any frontage on Union Street, is triangular in shape with a frontage of about 250 feet along the east line of Northfield Road to a point at about the south end of a viaduct or bridge over Tinker's Creek and the Metropolitan Park in the valley which bridge was built

in 1933 to provide for the extension of Northfield Road north of Union Street. The north line of said parcel proceeds easterly at about a right angle from the east line of Northfield Road about 127 feet. The most easterly side of this triangular shaped lot proceeds from the east end of the north line just described to a point 11.94 feet south and east of the place of beginning, a distance of about 275 feet. There is then an 11.94 foot arc proceeding northerly to the place of beginning. Parcel No. 2 is the next plot of land east of Parcel No. 1. This parcel, before the Northfield extension in 1933, had a frontage of 53½ feet on the northerly side of Union Street extending back 150 feet. The Northfield improvement took a triangular shaped piece from the entire front of this parcel, beginning from the point where its easterly line intersects Union Street and thence northerly to the most southerly point of Parcel No. 1.

The Northfield Road improvement, as constructed north of Union Street, provided a roadway 80 feet wide, taking 80 feet from the greater part of the west side of Parcel No. 1, together with all of its frontage on Union Street, and also took a triangular piece across the entire front of Parcel No. 2, as above stated, 53 x 63 x 33, thereby moving the setback line for a building constructed and facing on Union Street back more than 16 feet to the north of the setback line required for building on the other lots on the north side of the street.

In 1935, a comprehensive zoning ordinance was passed by the City Council of Bedford, which ordinance was amended in 1955. All of the property on the north side of Union Street, including that of plaintiffs, was zoned for single family dwellings, which is also true of the property on the south side of Union Street east of the church at the north west corner of the intersection of Northfield Road and Union Street. At that time the land on the east side of Northfield Road, from Union Street south to Paul Street, was and still is occupied by a church and parochial school. The northwest corner of this property at the intersection of Northfield Road and Union Street is now used as a parking lot for church offstreet parking. From Paul Street south on the east side of Northfield Road the frontage was and is zoned for retail business and the property to the east of the frontage on the lateral streets was and is zoned for single residence purposes. The property on the west side of Northfield Road at the north and south corners of Union Street was zoned for retail business and there is now located on each corner (the one across from plaintiffs' property and one across from the church), gasoline service stations of the type plaintiffs seek the right to build on their property. Both of these gasoline service stations are now in operation, and are conforming uses under the zoning ordinance. To the south of Union Street (about two blocks) and from there to the city limits, the zoning on the west side of Northfield Road changes from retail business to industrial use and many large industries now are situated in the area.

Northfield Road is a heavily traveled state highway, is known as State Route 8, is the main east side highway from Cleveland to Akron and Canton and intercepts the Ohio Turnpike about nine miles south

of plaintiffs' property. Union Street runs from Broadway (which is the main street in Bedford and is a heavily traveled state highway designated as State Route 14, which intercepts the Ohio Turnpike fourteen miles from plaintiffs' property) at its southerly end to Broadway at its northerly end, is known as Alternate Route 14, is very heavily traveled and, as above stated, plaintiffs' property is at the northeasterly intersection of these two heavily traveled main highways, routes upon which travel has been much increased by the Ohio Turnpike.

In 1935, The Cleveland Electric Illuminating Company acquired by legal action an easement over a strip along the entire Northfield frontage of Parcel No. 1 varying in width from 22 feet on the north to 8 feet on the south over which high tension electric lines are now maintained. One of the supports of these lines consists of two high poles placed twelve feet apart perpendicularly from the street line tied together with braces and supported by two heavy guy wires held by concrete deadmen buried in the ground to the south of the poles, all of which equipment is placed on and imbedded in the land subject to the easement.

The record shows that the plaintiffs have taken every step available to them in seeking legislative or administrative relief from the alleged confiscatory effect of the zoning ordinance as to their property. One other fact was brought out upon argument, the information being furnished at the court's request by the City. The question was whether or not a residence, complying with the building code and setback restriction requirements could be built on either of the parcels? The information furnished in reply to this request was that a house 20 x 30 on the foundation could be built which the court was informed was the smallest residence unit now permitted in the City. There are no deed restrictions as to the use of the property. The stipulations of fact provide that the proposed gasoline service station for which a building permit was requested by the plaintiffs and refused by the defendants, complies in every respect with the building and safety code requirements of the City except the use restrictions of the land as limited by the zoning ordinance.

One other fact agreed upon is that the northerly line of Parcel No. 1, which is also in part the southerly boundary line of the Metropolitan Park Bedford Reservation, is at a point where there is a precipitous of 86 feet drop into the Tinker's Creek Valley.

To recapitulate the facts, this intersection, upon which plaintiffs' property fronts, is the "busiest traveled of any street intersection in the City of Bedford and is used by both vehicular and pedestrian traffic." Both roads forming the intersection are access highways to the Ohio Turnpike. The two corners of the intersection, one directly across the road and one diagonally across the intersection from plaintiffs' property, are now used for gasoline service stations, and as such, conform to the zoning use restrictions. (See **Henle v. Euclid, 97 Oh Ap 258.**) The use across Union Street to the south at the intersection, if it could be said that plaintiffs still have any frontage on Union Street, which fact is in considerable doubt, is for offstreet parking on the church lot. The plaintiffs' parcels, particularly Parcel No. 1, unless used together with

Parcel No. 2, has been reduced both before and after zoning to almost an unusable shape by appropriations for public highway and public utility uses. Although it is possible to use each parcel for residence purposes with undesirable limitations, the probability of its use for that purpose has been almost completely destroyed.

Upon the foregoing undisputed facts, we must conclude that the plaintiffs are entitled to the writ as prayed for. Any other conclusion would put the decision in this case in direct conflict with the decision of the Court of Appeals for Warren County (First District) in the case of **The State, ex rel Euverard v. Miller, Inspector, 98 Oh Ap 283,** where the court held in the second paragraph of the syllabus:

"2. Where property is situated at the intersection of two heavily traveled thoroughfares, in the midst of commercial establishments, and has little suitability for residential use, but rather is a prime business site, the zoning thereof for residential uses only has no tendency to promate the public health, safety, morals, convenience, or general welfare, and bears no reasonable relation thereto and, as applied to such property, is arbitrary, unreasonable, and beyond the zoning power."

Zoning is the application of the police power of the state or municipal corporation in the classification of the use of real property for the protection of the health, safety, morals and the general welfare of the people. It cannot be permitted to completely destroy the value of the property of a citizen and at the same time provide no useful benefit to the people in the neighborhood to which it has application. Nor can a zoning ordinance be used to control competition. Either there must be public benefit derived from the exercise of the power or a restriction of the use of real property through a zoning ordinance is confiscatory and therefore unconstitutional. Zoning should also, as near as is reasonably possible, deal equally with like property or as to property similarly situated. Here, because of public need and the exercise of the right of eminent domain, the two parcels owned by the plaintiffs have been completely deprived of their frontage on Union Street and now, for all practical purposes, both lots front on Northfield Road or on the arc, created by the extension of Northfield Road, at the northeast corner of its intersection with Union Street. The uses for which the greater part of the area of at least one parcel can now be devoted, occasioned by the public taking or use of a part of both lots or originally owned by the plaintiffs, unless both parcels are used together, has been very materially restricted. The frontage on both sides of Northfield Road from the Northfield Road Bridge to the city limits to the south, a distance of 3600 feet, excluding the church property which was built before the zoning ordinance was passed, is zoned either for commercial or industrial use with the sole exception of the property of the plaintiffs. The property at the north end of the Bridge, situated almost exactly as is the plaintiffs, is likewise zoned for commercial purposes.

While the following fact could not be considered as lending more than a passing interest in support of plaintiffs' contentions on the issues here presented, it is true that the location of a gasoline service station opposite those already on the west side of Northfield Road would at least have the potential possibility of avoiding the necessity of northbound traffic crossing over these very heavily traveled thoroughfares for

service to the greater safety of highway users, both motor vehicle and pedestrian.

For the foregoing reasons, we find that the plaintiffs have a clear legal right to the relief prayed for.

Writ to issue.

Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.