**STATE, ex rel. PRENTKE, Relators, v. BROOK PARK (Village) et, Respondents.**
**STATE, ex rel. STINE, Relator, v. BROOK PARK (Village) et, Respondents.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 24628, 24629. Decided October 30, 1958.

Marston G. Bergmann, for relators.
Matia & Matia, for respondents.

**OPINION**

By HURD, J.

These cases in mandamus are here appealed on questions of law from judgments rendered thereon in the Court of Common Pleas in favor of the relators allowing writs of mandamus to issue as prayed for and enjoining the respondents, The Village of Brook Park, its officers and employees, from enforcing its zoning ordinance which by its terms restricted the properties of relators to single residence use only.

In the Court of Common Pleas all of the parties stipulated that the cases were to be tried together and that the evidence adduced would have equal application to each case. In addition to the evidence, there is a stipulation of certain facts which relate to the map and zoning ordinance of the Village and other matters unnecessary to discuss here.

The property in question is comprised of six vacant lots having a total frontage of 292 feet on Brook Park Road, each lot having a depth of 110 feet. The property of, relators Prentke, consisting of three lots 146 feet in width, is located at the southeast intersection of West 139th Street and Brook Park Road. The Stine property, of like dimensions, is located at the southwest intersection of West 139th Street and Brook Park Road. Applications to permit the installation of gasoline service stations and buildings on the premises under consideration were made by both parties and refused by the officers of the Village. These suits were commenced after the parties had exhausted all administrative remedies required of them under the provisions of the zoning ordinance.

To the rear of the relators' lots is a 15 foot alley duly dedicated which separates relators' property from lots improved with single residences which front on West 139th Street, a dead end street running south from Brook Park Road.

From an examination of the evidence, there is no question but that Brook Park Road is a main thoroughfare carrying a tremendously heavy traffic load of trucks and motor vehicles of all kinds due, in part, to being in a heavy industrial area and, in part, to the fact that Brook Park Road leads to the Cleveland Hopkins Airport and the Ohio Turnpike and many other points both east and west. Located on Brook Park Road a short distance from relators' property are the Ford and Chevrolet plants, on the south side of said road, each of which employs ten thousand or more people, who, because the public transportation on Brook Park in this area "is not so good," are obliged to drive private vehicles to and from their places of employment. Fronting on the south side of Brook Park Road are many other industries. Immediately west of relators' property is the Park Brook Motel, a Howard Johnson Restaurant, and the Holy Cross Cemetery, while to the east is first, a vacant

parcel of land zoned for industrial uses, then a large interstate trucking terminal, then a construction company and many other industries too numerous to describe at length. On the opposite or north side of Brook Park Road is a large open vacant section which is within the city limits of Cleveland, all zoned for industrial purposes.

Upon trial, the respondents did not present any testimony in their own behalf but confined their efforts to a cross-examination of the expert witness presented by the relators. A careful reading of the record supports the findings of the trial court that the expert witness of the relators is highly qualified and well informed on the subject of the development of Brook Park Road as an industrial area. He testified that other thoroughfares paralleling Brook Park Road are at present so overcrowded and inadeqquate that Brook Park Road has become a main highway for steel trucks and other trucks coming from the southeast, particularly from Pittsburgh and Youngstown, and that this is especially true since Brook Park Road has been extended to Lorain Avenue (State Route No. 10) which is the feeder line to the Ohio Turnpike in this area.

Concerning the tax situation affecting the property of the relators, the trial court made a statement of facts as found by him to the effect that the lot value of the lots fronting on West 139th Street, for taxation purposes, is $460.00, while the six lots fronting on Brook Park Road are each valued at a lot value, for taxation purposes, at $1220.00. The homes fronting on West 139th Street do not have any sewer assessments against them, while the three lots belonging to Prentke and the three lots belonging to Stine are subject to a sewer assessment on a ten-year basis of approximately $5500.00.

He further found, on credible testimony, that the normal ratio of land cost to that of the building would rule out the possibility of obtaining financing for the location of proposed one-family residences on these lots, for the reason that they are taxed more than residential properties are taxed, and for that reason, a person wanting a residence would not be able to afford to build on any of these lots in question as the tax load would be too much. His findings were further to the effect that because of the increased traffic on Brook Park Road, anyone wanting to build a home there would not do so because of the noise and the heavy traffic and especially because of the cost of lot, taxes, etc. being out of line to the ratio which usually exists in building one-residence structures. He further found, on credible testimony, that in line with the taxes and assessments on the cost of lot to building ratio, there should be $25,000 to $30,000 one-residence homes built on these lots in question, and that because of the industrial growth, no one would build that high-priced a dwelling and no financial institution would loan the money for such purposes.

The trial court also found that the erection of a gasoline station on these lots would not be to the detriment of the homes located on West 139th Street or in any way decrease their value, but under the testimony as introduced, the filling station contemplated to be built would be well constructed, well lighted and in operation twenty-four hours per

day on a seven-day week basis and that this in no wise would constitute a hazard to the people living on West 139th Street.

Upon examination of the bill of exceptions, we conclude that these findings are amply supported by expert and credible testimony.

Respondents' assignments of error are as follows:

"1. The trial court erred in holding that Sublots 1, 2, and 3 (and 38, 39 and 40) were unsuitable for residential purposes and therefore a permit for a gasoline filling station should be granted.

"2. The evidence is not sufficient to sustain the proposition that Sublots 1, 2, and 3 (and 38, 39 and 40) are not suitable for residential purposes.

"3. The trial court erred in overruling Defendants-Appellants' motion for judgment notwithstanding the verdict as a matter of law.

"4. The judgment of the trial court is not supported by sufficient evidence and is contrary to law."

When consolidated and considered together, these assignments of error present a single question. Was sufficient evidence produced by relators to warrant the finding of the trial court that the zoning ordinance in question, when applied to relators' properties, is arbitrary, confiscatory, unreasonable, and therefore, unconstitutional?

There are many cases which hold, in effect, that a zoning ordinance drawn in general terms, providing a reasonable margin to secure effective enforcement, will not be held to be invalid because individual cases may "turn out to be innocuous in themselves." This principle was first established in Euclid v. Ambler Realty Co., 272 U. S. 365, 47 Sup. Ct. 114, and has since been universally recognized and approved by authoritative decisions throughout the country.

In line with this and other analogous cases, it has been held that where a zoning ordinance is clearly arbitrary and unlawful without relation to public health, safety and morals or general welfare as to any particular property, it will be held invalid and unenforcable as violative of constitutional rights. These principles have now been so well established under the doctrine of stare decisis as hardly to require the citation of authorities. However, there are certain cases which are directly in point. In **Henle v. City of Euclid, 97 Oh Ap 258,** 125 N. E. 2d 355, this court held that the zoning ordinance of the City of Euclid, to the extent that it prohibited the use of the property in question for a retail gasoline filling station, was unreasonable and confiscatory. (Motion to certify overruled 10-20-54.) In relation to Henle v. City of Euclid, see also **Sun Oil Co. v. Euclid, 164 Oh St 265,** 130 N. E. 2d 336, where questions relative to the issues in Henle v. City of Euclid are discussed by the Supreme Court.

Another case in point is **State, ex rel. Euverard v. Miller, 98 Oh Ap 283,** 129 N. E. 2d 209, wherein the court of appeals of Warren County held that in a mandamus proceeding by a real estate owner to compel the issuance of a commercial building permit for residential zoning, real estate situated on a heavily traveled highway in the section where property adjacent thereto and diagonal therefrom was used for commercial purposes, the evidence showed that the real estate had little suitability for residential use but rather was a prime business location and zoning

thereof for residential purposes bore no relation to the public health, safety, morals, convenience or general welfare and was arbitrary and unreasonable and beyond the zoning power.

See also **Kessler v. Smith, 104 Oh Ap 213,** 142 N. E. 2d 231 (Motion to certify overruled 10-30-57), and **State, ex rel. v. Joseph, 139 Oh St 229,** 39 N. E. 2d 515.

In the case at bar, the trial court found correctly from credible evidence that since the time when the lots in question "were zoned residential" there has been a great industrial growth in the immediate and adjacent properties to the east and to the west, and that there has been such industrial growth on Brook Park Road that these lots should no longer be classed as residential land, and that they are suitable for the erection of a gasoline service station.

The respondents in their brief cite the case of **The Cleveland Trust Co. v. Village of Brooklyn, 92 Oh Ap 351,** 110 N. E. 2d 440, decided by this court in 1952 (Motion to certify overruled 10-29-52). It is our opinion that the fact situation presented in The Cleveland Trust Co. v. Brooklyn case is clearly distinguishable from the facts in the instant case. In that case we held that if the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. Later, in **Partain v. City of Brooklyn, 101 Oh Ap 279,** 133 N. E. 2d 616 (March 22, 1956), this court had for consideration the identical property considered in the case of The Cleveland Trust Co. v. Village of Brooklyn, but with this difference that in the meantime the council had changed the zoning regulations from dwelling house to industrial use. We again held that the question being fairly debatable, the legislative enactment must prevail. In our opinion, on the facts as shown by the instant case by the findings of the trial judge, which are amply supported by the record, the question is not even fairly debatable. Therefore, we agree with the conclusion of the trial judge that the ordinance in question, as it relates to the six lots in question, is arbitrary, confiscatory and does not promote the public health, safety, morals and general welfare but actually destroys plaintiffs' properties by forcing an impossible use upon these properties. These lots are no longer either useful or usable for residence purposes under the facts and circumstances surrounding their location as shown by the record and under the conditions which prevail in this area. In our opinion, this case affords a classic example calling for judicial relief where the Village authorities are unwilling to grant such relief.

We conclude, therefore, that as applied to the properties in question, the ordinance amounts to an unreasonable and arbitrary interference with the rights of private property guaranteed by **Sections 1** and **19. Article I, Ohio Constitution,** and Section 1 of the Fourteenth Amendment to the Federal Constitution.

The judgment of the trial court, for the reasons stated, is, therefore, affirmed. Journal entry may be prepared accordingly.

SKEEL, PJ, KOVACHY, J, concur.