PATTON, Plaintiff, v. SPRINGFIELD (City), Defendant.

Common Pleas Court, Clark County.

No. 53781. Decided November 1, 1960.

38

*Mr. Robert C. Acton*, for plaintiff.
*Mr. Thomas J. Veskauf*, city solicitor, for defendant.

Goldman, J. This is an action for a declaratory judgment to determine the constitutionality of Section 1131.02 of the Codified Ordinances of the City of Springfield, Ohio, and of the right of the plaintiff to construct a gasoline service station on real estate owned by him. The ordinance is part of the Zoning Code of the City of Springfield and is as follows:

CHAPTER 31

Garages

1131.01 Private garages.                    1131.02 Public garages.

"1131.02 *Public garages.*

"No public garage, garage repair shop or filling station shall have any part of its premises located within a radius of one hundred (100) feet of the premises of a public school, private school, playground, public library, church, hospital, orphanage, or children's home existing at the time of the passage of Ordinance 4682, passed December 1, 1947.

"Except in an industrial district, all entrances and exits of public garages shall have an unobstructed width of not less than twelve (12) feet for a distance of not less than five (5) feet from the street line.

"A public garage repair shop shall not have an opening in a wall or roof within fifteen (15) feet of adjacent property, except fixed wired glass windows in noncombustible frames. Ord. 4682. Passed 12-1-47."

Following a pre-trial conference at which certain stipulations were agreed upon and the subsequent filing of an agreed statement of facts together with briefs and exhibits, the case was submitted to the court for decision upon the record thus made up.

Plaintiff owns property on the north-west corner of Roosevelt Drive and North Limestone Street in the City of Springfield, Ohio, and his property is within 100 feet of Roosevelt Junior High School, immediately across the street on North Limestone Street. This area is defined by the Zoning Code

as a General Business Area. Prior to World War II a filling station was operated at the site owned by plaintiff, but abandoned during the war because of gasoline rationing. Plaintiff later sought a building permit authorizing the construction of a gasoline service station, but his application was denied because in the meantime the above ordinance had been enacted. Roosevelt Junior High School was in existence on December 1, 1947.

Plaintiff claims that the ordinance is unconstitutional in that its several classifications bear no substantial relationship to the health, safety, morals or general welfare of the City of Springfield, Ohio, and are in fact and in law arbitrary, discriminatory and unreasonable.

Defendant denies plaintiff's contentions and claims that the enactment of the ordinance was a valid and reasonable exercise of its legislative authority and that there is no reason recognized by law for setting it aside or holding it unconstitutional.

Plaintiff argues that the ordinance is discriminatory, arbitrary and unreasonable because it singles out the several businesses therein specifically described subjecting them to the restrictions therein contained, whereas other drive-in businesses whose operations involve at least equal if not greater hazards to the health and safety of the community than that which attend the operation of a filling station were not made subject to its provisions. Plaintiff further argues that confining the application of the ordinance to buildings and uses in existence only on December 1, 1947, is arbitrary and discriminatory; that a strict application of said ordinance would *permit* the erection of a filling station within 100 feet of the buildings and uses therein listed, which came into existence after and following December 1, 1947, and that such distinction is without any rational basis and unrelated to the health, safety or welfare of the City of Springfield, Ohio.

The power of a municipal corporation to make *reasonable classifications* in its legislative enactments is conceded by both parties. The rule is thoroughly discussed in 11 Ohio Jurisprudence 2d, p. 6, etc. in the chapter "Equal Protection of the Laws; Class Legislation." Thus at p. 13, we read:

. "The classification must have a valid basis. The classification must be reasonable and not arbitrary, artificial, or evasive. There must be a real and substantial distinction in the nature of the class or classes upon which the law operates. The classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, *so that all persons in similar circumstances are treated alike. Statutes must operate equally upon all persons of the same class. No discrimination or favoritism among members of the same class is permitted.*" (Emphasis throughout this opinion is by this Court.)

For a further statement of the rule as to the standards to be applied in determining the validity of classifications contained in legislation, see *City of Xenia* v. *Schmidt,* 101 Ohio St., 437.

"4. Classification is an inherent right and power in legislation, limited only by the Constitution and the judicial constructions thereunder.

"5. A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates.

"6. In respect to such distinctions, the legislative body has a wide discretion, and the legislation involving classification will not therefore be held invalid unless the classification attempted is clearly and obviously unreasonable to the point of discriminating against members of the same class, so as to deny them the equal protection of the laws."

Thus the issue before the court is whether or not the various classifications found in the ordinance prohibiting a public garage, garage repair shop, or filling station within 100 feet of the premises of schools and other institutions and public places therein specifically named existing on December 1, 1947, are valid and comply with the standard of reasonableness described and set forth in the above citations.

Courts have generally held to be valid and reasonable, zoning ordinances which prohibit garages or gasoline stations within reasonable distances from schools, churches and public places.

See Rathkopf, The Law of Zoning and Planning, Vol. 1, pages 331 and 353 etc.

An examination of the authorities therein and elsewhere cited indicates that the courts have allowed considerable leeway to municipalities in making these classifications on the theory that they are designed to protect school children and others from the hazards of fire and other like and similar hazards which arise out of the maintenance and conduct of any uses such as gasoline tanks, gasoline service stations, or garages near schools, churches, hospitals and playgrounds.

In Ohio, gasoline filling stations properly installed and operated are not considered to be nuisances per se, but filling stations located in certain localities have been held to have the potentiality of becoming a nuisance and are therefore subject to the *valid* exercise of the police powers by proper authorities.

See *State, ex rel. Standard Oil Co.* v. *Combs et al*, 129 Ohio St., 251. Also *Adams* v. *Gorrell*, 28 Ohio App., p. 55.

However, in all of these cases the principle recognized, emphasized and applied, is that the regulations and the classifications must be reasonable and fair and must bear a substantial relation to the public safety and the public welfare.

The rule governing judicial review of these legislative enactments may be found in 11 Ohio Jurisprudence 2d, p. 18, which in part is as follows:

"The policy, wisdom, or expedience of legislative classification is not subject to judicial question or review unless the classification is manifestly arbitrary or unreasonable, but whether or not such a classification is purely arbitrary or is unreasonable and within legislative discretion is, *in controverted cases, a subject for judicial review and determination.*

One who assails a statute on the ground that it involves a classification denying the equal protection of the laws cannot be supported by mere speculation or conjecture. The courts will *presume* that a legislative classification is reasonable, fair, and based on legitimate grounds of distinction. All reasonable doubts must be resolved in favor of a classification made by the legislature and it is the duty of the court to sustain it if any *reasonable* distinction can be found."

See also the 1st syllabus in *State, ex rel. Standard Oil Co., v. Combs et al, supra.*

We refer now to the record in this case, that is, to the agreed statements of facts, the exhibits, the stipulations and the briefs. A careful examination of this record fails to disclose or even to suggest any warrant or justification for several classifications set up in the ordinance other than the presumption of validity which the court must give to legislative enactments. Thus an examination of the agreed statements of facts reveals that the defendant in making these classifications and restrictions *did not* act on the basis of any expert or professional opinion as to the hazards sought to protect against and in particular it did not act upon the ''professional opinion of the Planning Staff of the city,'' as erroneously stated on page 1 of defendant's memorandum. This error was corrected by a supplemental letter dated September 9, 1960, and by agreement of counsel, made a part of the record.

However, it is claimed and argued that the present Professional Planning Staff of the City would now urge that the classifications in the ordinance are justified *for reasons of traffic and traffic congestion.* The agreed statement of facts reveal, however, that the present professional Planning Staff also insists that other drive-in businesses should have been similarly excluded and that no valid distinction can be drawn between filling stations and other drive-in businesses such as eating establishment, except that the latter are even more hazardous from the point of view of traffic than the former.

See Paragraph 1—Stipulations Of Facts.

In this connection it might be observed that if the only justification to be considered for the exclusion of filling stations are the hazards of traffic and *not fire and similar hazards*, generally advanced as reasons for ordinances of this kind, that a serious question is then raised as to whether zoning ordinances and the admitted authority of a municipality to enact zoning laws can be used and justified to reduce traffic congestion.

See *State, ex rel. Killeen Realty Co. et al., v. East Cleveland et al.,* 79 Ohio Law Abs., 296, Syllabus 5.

''*A city cannot use zoning ordinances as a primary means*

*of regulating traffic or in attempting to reduce traffic conges-
tion."*

The agreed statement of facts further reveal that the Chief
of the Springfield Fire Division would testify that there *are
no fire hazards* created by the establishment of a garage, garage
repair shop or filling station prohibited by this ordinance and
the Springfield City Health Department would report that
*no health hazard is involved* or prevented by the restrictions
and prohibitions of said ordinance; the Building Inspector and
the Traffic Engineer and the Chief and head of Traffic Safety
of the Springfield Police Division also agree and would testify
that *a filling station does not offer any hazard to the health,
safety or welfare by reason of their closeness to other occu-
pancies*, though both agree that the operation of *public garages
and garage repair shops* may involve such hazards. The Fire
Chief and the authorities in the Police Department also agree
and would testify that their records reveal that *no fire hazard
or traffic hazard exists or has occurred in any instance where
filling stations do exist within 100 feet of schools or other and
similar establishments.*

The record fails to disclose any further facts or stipula-
tions which deny or contradict this testimony found in the
agreed statement of facts.

An examination of Plaintiff's Exhibits "A" and "B,"
also is of significance in determining whether or not a reason-
able relationship exists or was ever deemed to exist between
the banning of *filling stations* within 100 feet of a school and
the health, safety or general welfare of the community. Thus
exhibit "A" reveals the 12 filling stations and garages within
100 feet of schools, churches and hospitals which are now and
were in existence prior to December 1, 1947, and exhibit "B"
reveals the *12 others* that have been permitted within 100 feet
of schools, churches, hospitals and playgrounds since *December
1, 1947.* Included among the latter are several service stations
and garages which were permitted to be erected within 100 feet
of institutions in existence long *before December 1, 1947*, not-
withstanding the provisions of the ordinance. Exhibit "B"
also calls attention to the fact that in 1953 the defendant, the
City of Springfield itself, *leased* to the *Bonded Oil Company*

a portion of property it owned on Selma Road in the City of Springfield, on the site of the former and now abandoned City Hospital, *for use as a gasoline filling station*, although this leased portion of the property is *immediately adjacent to and contiguous to a playground which* the city itself owns and maintains and which has been used as a playground long before 1947, and indeed is still being used and operated by the city as a playground, in spite of the ordinance, and the reasons presumably existing for its enactment.

While it is true, as pointed out in defendant's brief, that proof of the abuse and violations of the provisions of the ordinance in other instances would not of itself be grounds for declaring the same unconstitutional, nevertheless the history of violations as disclosed by the record, including that by the direct and deliberate act of the defendant City of Springfield itself, as above related, is not without significance. Taken into consideration along with all of the other evidence and the circumstances incident to the adoption and application of the ordinance as heretofore and hereafter to be noted, it compels the conclusion that the defendant, City of Springfield, never thought or believed that there was any actual hazard of any kind involved in the operation of a *filling station* within 100 feet of a school or playground, regardless of whether the latter was in existence either prior to or following December 1, 1947, and that the inclusion of "filling stations" within the classification of those enterprises restricted by the ordinance was in fact without any rational basis and is thus unreasonable and unwarrantedly discriminatory.

Furthermore, it is of interest to observe that the ordinance is found in a chapter titled "Garages" and that the two sections appearing thereunder do so under the sub-titles "Private Garages" and "Public Garages" and without mention of "filling stations" and that Section 1131.02, except for the first paragraph, deals with the regulation and size of entrances and openings in the walls as they relate *only to garages and garage repair shops* and that not a single word is devoted to or concerned with "filling stations." Indeed the words "filling station" are omitted everywhere else in the ordinance except for their bare inclusion along with garages and garage

repair shops in the classification of businesses restricted. It should also be noted that Chapter I of the Zoning Code, Sections 1101.01 through 1101.24, inc., is devoted to definitions of the various designations and terms used in the Zoning Code and that while both the words and expressions "public garages" and "garage repair shops" are defined, in separate sections, see Sections 1101.20 and 1101.21, that no definition or description of a "filling station" is given. In the opinion of this court these are significant omissions since the operation of a "filling station" would seem to present the same problems as garages insofar as their construction and size and actual meaning are concerned. The omission of any provisions dealing with them suggests that the inclusion of the words "filling station" within the classification of businesses restricted in Section 1131.02, may have been due to inadvertence and perhaps the result of copying without careful examination phraseology from some ordinance forms suggested for ordinances of this nature, but in either event without intention, conscious thought or heed for the existence or lack thereof of any reasonable basis for legislating against "filling stations" and without conscious or deliberate concern about any relationship between the operation of a "filling station" within 100 feet of a school and the health, safety or general welfare of the community. This view finds further support in reference to the agreed facts where some opinion may be found that *garages* or *garage repair shops create some hazards*, but a complete failure of any opinion or proof whatsoever, concerning the existence of any hazards with respect to *filling stations*.

Thus, while lumping together and banning both filling stations and garages and garage repair shops might *ordinarily be presumed to be proper and valid and presumed to have some reasonable relationship* to the health, safety, or general welfare of the community in accordance with the rules of construction, interpretation and judicial review heretofore noted, yet insofar as such ordinance applies to filling stations, the record in this case is not only completely devoid of any proof that the inclusion of filling stations within the restricted classification has any relationship to the health, safety or general welfare of the

community but on the contrary the weight of the proof is over-whelming and compels a finding that the inclusion of "filling stations" among the restricted enterprises is unreasonable and unfair.

Another objection to the ordinance has been made and requires consideration. The ordinance provides that the busi-nesses therein named are prohibited only in case they are con-ducted within 100 feet of certain public places and institutions, including schools, which were in existence on the date of the passage of Ordinance 4682, to wit *December 1, 1947*.

A search of the complete record in this case fails to disclose any reason whatsoever either offered or suggested for this restriction and classification. The defendant in its brief, for the first time does suggest that the punctuation and grammatical construction of the sentence and clauses containing the word "December 1, 1947," indicates that it relates to and is a quali-fication only upon any childrens' homes existing on that date and not the other public places and institutions therein set forth. The court has reexamined the language of the ordinance and does not reach that conclusion. The court recalls that throughout these proceedings it was assumed and agreed that the plaintiff was denied a building permit for his filling station, not because it would be located within 100 feet of a children's home, there being no children's home in that area, but for the specific reason that it was within 100 feet of a school in existence on December 1, 1947, and thus in violation of the ordinance.

This classification therefore would allow garages and filling stations within 100 feet of a public school, private school, play-ground, public library and church, hospital, orphanage or children's home, if any of these public places came into exist-ence after and following December 1, 1947, but would prohibit them within 100 feet of a school, etc., already existing on said date. The court is at a loss to conceive of any reasonable justi-fication for such a classification. If one inquires how the hazards of fire or traffic are in any respect affected or increased or diminished merely because the public places protected were existing on December 2, 1947, instead of December 1, 1947, one day earlier, no answer is suggested, none is offered by the de-fendant or to be found in the record, and of course no legal

authority is submitted or cited in support of such classification. Under these circumstances to prohibit plaintiff from erecting a "filling station" because his would be within 100 feet of a school which existed on December 1, 1947, is so discriminatory and unreasonable as to stamp such classification as arbitrary and a denial to plaintiff of the equal protection of the laws to which he is entitled under the Constitution of our state and nation.

The court finds therefore that the inclusion of "filling stations" within the classification of restricted enterprises as provided by ordinance 1131.02 of the Zoning Code of the City of Springfield, Ohio, in the complete absence of any satisfactory reason for such inclusion and in the face of a record which clearly establishes that such inclusion was indeed completely without foundation, was not proper, and that the further distinction drawn between public places existing on and after December 1, 1947, is likewise unreasonable and without any justification and similarily improper.

The court in *Partain et al., v. City of Brooklyn et al.,* 101 Ohio App., 279, held in part as follows:

"1. The legislative function of a municipality in establishing zones and classifying property accordingly will not be interfered with by the courts *unless such power is exercised in an arbitrary, confiscatory and unreasonable manner in violation of constitutional guarantees.*"

In the opinion of this court the record in this case clearly and overwhelmingly establishes that paragraph 1 of Section 1131.02, in-so-far as it applies to "filling stations," *is arbitrary, confiscatory and unreasonable,* and in violation of constitutional guarantees for lack of any substantial relationship to the health, safety or general welfare of the community.

10 Ohio Jurisprudence 2d, 263, dealing with Constitutional Law, and the effect of *partial* unconstitutionality of a statute states the rule as follows:

"It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part, and that if the invalid part is severable from the rest, the portion which is constitutional may stand, while that which is unconstitutional is rejected."

In accordance with this principle, paragraph 1 of Section 1131.02 of the Zoning Code of the City of Springfield is held to be severable from the remainder of the ordinance and for the reasons heretofore given is held invalid and unconstitutional. This holding, however, does not effect adversely the constitutionality of the remaining two paragraphs of ordinance Section 1131.02, the constitutionality of which is upheld.

Furthermore, plaintiff is declared entitled to construct a "filling station" on the property described in the petition, subject only to such other restrictions and qualifications as exist in law.

An entry in accordance with these holdings may be drawn and submitted.