STANDARD OIL CO. *v.* REDWINE ET AL.

(No. A-212234—Decided July 22, 1968.)

Common Pleas Court of Hamilton County.

*Messrs. Squire, Sanders & Dempsey, Mr. H. Vincent E. Mitchell, Messrs. Frost & Jacobs* and *Mr. Donald McG. Rose,* for appellant, The Standard Oil Company.

*Messrs. McCaslin, Imbus & McCaslin* and *Mr. Clement J. DeMichelis,* for appellee, city of Reading.

KOHNEN, J. This is an appeal from a decision of the Council of the city of Reading, Ohio, denying the appellant The Standard Oil Company's application for a permit to construct a gasoline service station at Amity Road and Sherman Avenue in the city of Reading; this matter was heard by the court and submitted for a ruling.

The permit was denied because the property concerned here is not located in a zone described as "Business E" as required by ordinance providing for the zoning of gasoline service stations. The property is located in the "light industry" zone.

The appellant contends that these provisions of the Reading Zoning Ordinance as they apply to the property concerned here, are arbitrary, unreasonable and unconstitutional, and that these provisions constitute a denial of the appellant's right not to be deprived of the use of its property without due process of law, provided by the Fourteenth Amendment to the United States Constitution.

The appellant, by a number of expert witnesses, presented testimony in support of its position and a number of maps, statistical documents, plats and photographs were offered and received into the record. The land concerned here is located at the northeast corner of Sherman Avenue and Galbraith Road, also known as Amity Road, in the city of Reading. Appellant also has an option to purchase two additional continuous tracts which lie immediately west of the parcel owned. Sherman Avenue is approximately one block east of the intersection of Reading and Galbraith Roads, where there are two existing gasoline stations, one owned by the Tresler Oil Company at the southwest corner and one owned by the Sinclair Refining Company on the northeast corner.

The testimony discloses that under the classification

of "light industry," a large and varied number of uses are permitted, including automobile repair shops, bottling works, laundries, manufacturing of drugs, and storage and distribution of bottled gas. A number of witnesses testified in their areas of experience, concerning traffic, insurance, safety, etc., that a gasoline service station in the area concerned here, as related with the other uses now permitted, would have no adverse effect upon the area.

The appellee city of Reading responds through its attorney Clement J. DeMichelis. The court quotes his response as it appears on pages 7 and 8 of the record:

"I might just say our position is essentially going to be based on the proposition that the ordinance here as made by the city of Reading is essentially a political one. That whether or not the place might be suitable for use by the Standard Oil Company for a gasoline service station, the city nonetheless has the right to adopt a comprehensive set of ordinances as they have set them out and classified them as they have.

"We don't think it will be shown that they are arbitrary in so doing, and we don't think that there will be a showing that this property is not usable for the purposes for which it is zoned. And the evidence will conclusively show that the property which the Standard Oil Company is involved with here is property which is imminently useful for the purpose which it was zoned, those particular uses listed in the light industry clasification."

The appellee presented the testimony of Gerald R. Glaser, the city solicitor of the city of Reading, who identified some exhibits as types of property located in this area, such as residences, industrial use, and service stations. (See pages 202 through 209 of the record.)

The court has reviewed the entire record, including the transcript of the testimony of all the witnesses. The court has also considered the memorandum submitted and the law as it concerns the facts in the case here. The court reviewed all authorities submitted and others, concerning the issue presented here, including *City of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365; *State, ex rel. Husted* v. *Wood-*

*mansee* (App. Cuyahoga County, 1960), 86 Ohio Law Abs. 121; *State, ex rel. Sun Oil Co.,* v. *City of Euclid,* 164 Ohio St. 265; *Murdock* v. *City of Norwood,* 25 Ohio Law Abs. 233; *Utopia Realty Inc.* v. *City of Cleveland Heights,* 12 O. O. 332; *Patton* v. *City of Springfield,* 85 Ohio Law Abs. 37; *Sun Oil Co.* v. *Board of Zoning Appeals,* 9 Ohio Misc. 101; *Caudill* v. *Village of Milford,* 10 Ohio Misc. 1; *State, ex rel. Rosenthal,* v. *Bedford,* 74 Ohio Law Abs. 425.

Concerning the scope of *Euclid* v. *Ambler, supra,* the following appears in 58 Ohio Jurisprudence 2d, Zoning, Sec. 34, page 507:

"The Supreme Court, in *Euclid* v. *Ambler Realty Co.,* did not go further than to declare that comprehensive zoning in general is within the modern concept of the police power, and does not take property without due process of law when its regulations are reasonable. * * *

"The problems which remained, after the Euclid case answered the basic question of validity, were many. As anticipated by the Supreme Court, ordinances have been challenged on the ground that they were unconstitutional as applied to a *particular piece of land. Each case of this kind is entitled to an appraisal based upon the exact, existing facts which relate to the land and the neighborhood."* (Emphasis added.)

The court also reviewed *State, ex rel. Rosenthal,* v. *Bedford, supra,* wherein the court refers to *State, ex rel. Euverard,* v. *Miller, Inspector,* 98 Ohio App. 283, where the court held in the second paragraph of the syllabus, as follows:

"2. Where property is situated at the intersection of two heavily traveled thoroughfares, in the midst of commercial establishments, and has little suitability for residential use, but rather is a prime business site, the zoning thereof for residential uses only has no tendency to promote the public health, safety, morals, convenience, or general welfare, and bears no reasonable relation thereto and, as applied to such property, is arbitrary, unreasonable, and beyond the zoning power."

In 58 American Jurisprudence, Zoning, Sec. 14, pages 948 and 949, appears the following:

"However, the governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of the use of his land is not unlimited, and in a number of cases zoning laws have been unable to withstand objections to their constitutionality. * * * Hence, it has been asserted that each case wherein the validity of a zoning regulation is called into question must be decided on its own particular facts."

Also, in 58 American Jurisprudence, Zoning, Sec. 70, page 986, appears the following:

"There are cases in which zoning provisions prohibiting the establishment or maintenance of particular kinds of business, or any kind of business, in specified districts, have been regarded as invalid because of the unreasonable, arbitrary, or oppressive nature thereof. There is, however, a presumption of the reasonableness of such regulations, and in most cases their validity has been upheld as against contentions that they are unreasonable, arbitrary, or oppressive. Claims that particular zoning provisions relating to the location of business in particular districts are void for indefiniteness, have also been rejected."

*State, ex rel. Prentke,* v. *Village of Brook Park,* 107 Ohio App. 325, concerns zoning ordinances restricting property to a single residence and are distinguishable from the facts in the instant case; however, in commenting on the testimony of the expert witnesses the court said:

"A careful reading of the record supports the findings of the trial court that the expert witness of the relators is highly qualified and well informed on the subject. * * *"

On page 327 appears the following:

"The trial court also found that the erection of a gasoline station on these lots would not be to the detriment of the homes located on West 139th Street or in any way decrease their value, but under the testimony as introduced, the filling station contemplated to be built would be well constructed, well lighted and in operation twenty-four hours per day on a seven-day week basis and that this in no wise would constitute a hazard to the people living on West 139th Street."

On page 53 of the record appears the following testimony of Wilbert H. Dietrich, Secretary of Reading Board of Appeals:

"Q. All right. Then in your capacity as secretary of the Board of Zoning Appeals, what is your recollection as to whether or not one of the reasons that the appeal was denied was that the Board of Zoning Appeals made a judgment that there already sufficient gasoline stations in the area?

"A. It was not based on the area. They felt, as I stated before, that the city had been rezoned in the last few years and that they felt that it was a sufficient number of stations in the entire city. At the time, we had stations that were setting up which the people felt were eyesores, and they could see no need for a rezoning of that particular piece of property."

Although it has long been established that the court may not substitute its judgment for that of the legislative body establishing zoning regulations, the court may determine whether they are so unreasonable and arbitrary as to be unconstitutional.

The court also considered here the classification of service stations under "Business E" in relation to the public health, safety, morals, convenience and welfare of the community. In this area the court finds that there is no such relation that would adversely affect the public health, safety, morals and welfare.

The court finds that ordinance "Business E," as applied to the property concerned here, is arbitrary and unreasonable. Therefore the court finds that the appellant is entitled to and the Building Commissioner of the city of Reading is hereby ordered to issue the permit for a construction of a gasoline station at the corner of Amity and Sherman Avenue in Reading, Ohio.

Kindly present an entry in accordance with this ruling.