DUSI *v.* WILHELM ET AL.

[Cite as Dusi v. Wilhelm (1970), 25 Ohio Misc. 111.]

(No. 189461—Decided August 14, 1970.)

Common Pleas Court of Mahoning County.

*Mr. Frank P. Anzellotti,* for plaintiff.
*Mr. James E. Bennett, Jr.,* for defendants.

CAVALIER, J. This is an action for declaratory judgment, consisting of two causes of action. In his first cause of action plaintiff states that he is the owner of a parcel of land, situated in Beaver Township, Mahoning County, Ohio, which he purchased in December of 1958; that at the time of the purchase the land was used as a mobile home park; further that on November 4, 1958, a zoning ordinance was passed by Beaver Township in which his parcel of land was zoned R-1 to a depth of 300 feet from the side of Woodworth-New Springfield Road. He states that when this ordinance was enacted the total parcel of land was

being used either as a mobile home park or a mobile home sales lot; that plans had been made for the use of the total property as a mobile home park. He states further that the first 300 feet of his property was being used for one mobile home, but later when he attempted to add other mobile homes, the defendant, Clarence K. Wilhelm, Zoning Inspector of Beaver Township, caused a warrant to be sworn out for his arrest for violation of the Beaver Township Zoning Ordinance in that under such ordinance, the first 300 feet having been zoned R-1, the placing of more than one mobile home thereon was prohibited by the ordinance. Plaintiff says that as applied to his property the zoning ordinance of Beaver Township is confiscatory, arbitrary, and unreasonable, in that the part of his property so zoned R-1 has no value as residence property; that it cannot be used as such and said ordinance is unconstitutional as applied to this land. He states further that he has been threatened with further prosecution and arrest if he seeks to use the front part of his property as a mobile home park and that he has no adequate remedy at law.

In his second cause of action he states that prior to the election of November 4, 1958, the property now owned by the plaintiff was used as a mobile home park; although the first 300 feet was temporarily vacated from such use for the purpose of improving the property so such use could be continued, but that there was no intention of abandoning such use. He states further that after the effective date of the Zoning Ordinance of Beaver Township, the use of such property as a mobile home park would be a nonconforming use; but that when plaintiff attempted to add mobile homes to such property, he was declared to be in violation of the law. He states further if he attempts to use the property as a nonconforming use, he will be subject to prosecution and that he has no adequate remedy at law. The plaintiff then prays for a declaratory judgment on his first cause of action as to the validity and constitutionality of the zoning ordinance as applied to his property. He prays further for a declaratory judgment on his second cause of action praying that the court de-

clare the use of plaintiff's property as a mobile home park be a nonconforming use and thus not in violation of law; that the defendants be enjoined from enforcing or attempting to enforce that ordinance and that upon final hearing, such ordinance be declared unconstitutional and void as pertaining to the plaintiff's property; and that such injunction may be made perpetual. He asks for further relief that may be necessary and proper for his cause.

Testimony was taken by the court; and at the conclusion of the taking of testimony, each of the parties specifically asked the court to personally visit and examine the area. Pursuant to the request of counsel, the court has made not one but several trips to the area, and he has carefully examined the entire area. There is no question but that the township trustees and the citizens of Beaver Township have the legal right to pass zoning regulations; and such zoning regulations are not unconstitutional if they are reasonably necessary for the preservation of the public health, safety, morals, or welfare. The Supreme Court of Ohio has said that the benefit of the public health, safety, morals, or welfare which results from enforcement must outweigh the loss which the restrictions impose upon the owner. See *Curtiss* v. *Cleveland,* 170 Ohio St. 127.

However a zoning regulation is unreasonable and arbitrary if it serves no legitimate end of the police power or where it deprives the land owner of the whole value of his real estate. See *State, ex rel. Rosenthal,* v. *Bedford,* 74 Ohio Law Abs. 425.

It has been held that regulations which so restrict the use of the particular land as to render it valueless, to leave the owner with the right to use the land for purposes which are not economically feasible or to permit the owner only uses which are highly improbable or practically impossible under the circumstances have no reasonable tendency to serve the health, safety, morals, or welfare of the community. This is a taking of property without due process of law and amounts to confiscation. See 58 Ohio Jurisprudence 2d, Zoning, Section 92.

In *Kessler* v. *Smith* (1957), 104 Ohio App. 213, where a regulation threatened land owners with a loss of $20,000 invested in a trailer park, the court found the regulation to be confiscatory, and in *Cleveland Builders Supply Co.* v. *Garfield Heights,* 102 Ohio App. 69, a zoning regulation was found to deprive an owner of 90 per cent of the use value of his land and was thus declared unconstitutional.

In the case of *Clifton Hills* v. *Cincinnati,* 60 Ohio App., at page 49, the following is found: "Zoning ordinances are an exercise of the so-called police power and the police power does not extend to arbitrary, capricious and unreasonable action ostensibly taken to promote the public safety, health, morals, general welfare or prosperity, but having no relation to any of these objects."

Further from the case of *White* v. *Cincinnati,* 101 Ohio App., at 160: "A municipal corporation, in the exercise of its governmental power to promote the health, morals, safety, prosperity and general welfare of the people within its jurisdiction, has authority to enact zoning ordinances that are reasonably calculated to accomplish those objects, but the exercise of this power as a cloak for arbitrary, despotic and unreasonable action that has no reasonable relation to the just objects of government violates the requirement of due process of law found in both the state and federal constitutions."

The question involved relating to the first cause of action is to determine whether or not the zoning regulations classifying the first 300 feet of plaintiff's property as R-1 is unconstitutional as applied to that land. As the court has indicated, he has made a most careful inspection of the entire area and in addition has carefully scrutinized the testimony relating to this issue. The portion zoned R-1 would produce five lots, if zoned for single dwellings, with an estimated value of not more than $700 for each lot. The evidence indicated that financing for the purpose of placing single homes on this land would be almost impossible to obtain. The land fronts on a state highway (Route 626). FHA financing is not available for land fronting on state highways. The land is in a depressed area. It lies

immediately in front of a trailer park in sight of strip mines, railroad tracks, and a coal tipple. No sewerage or water is available in the area, and builders would be required to sink their own wells. Real estate experts testified that it was their opinion that no one would place a single-family dwelling on this land and that it could not be used for single-family dwelling purposes. In addition there is a large junk yard south on Route 626 within a half mile or so of the subject property. Large spoil banks extend from the coal tipple which lies immediately to the rear of this property a great distance to the south. Also on the rear of this parcel of land, there are a great number of trailers; it is a trailer park at the present time. It would be extremely unlikely that anyone would desire to build single-family dwellings immediately in front of a trailer home park. There have been very few homes built in the entire neighborhood within the last 10 or 12 years. The homes in the area are of all shapes and sizes with varying degrees of set-back from the streets. Mobile homes are interspersed throughout the area with a large mobile home park lying two or three blocks north of this property, north of Maplecroft Avenue, between Route 626 and Harvard Boulevard. This park is well kept and is not at all unattractive.

Were this property to be used for the purpose for which it was originally bought; that is, for mobile homes with the land in question, the owner could create 38 mobile home lots. FHA financing is now available for the purchase of mobile home lots, and loans of up to 90 per cent of the value are available to purchasers. The 38 mobile home lots which could be created would be valued at $3,000 each. Developing costs would be approximately $1,200 per lot leaving a net income to the owner of $1,800 on each lot.

In considering the entire area and all the surrounding factors which the court has outlined above, particularly the fact that a large mobile home park lies on the rear of this parcel and that another mobile home park is located two or three blocks south of this parcel; that mobile

homes are interspersed throughout the entire area, it is the considered judgment of this court that to require the plaintiff to use this land for residence purposes and to deprive him of his right to use it for the purposes for which he bought the property would amount to confiscation of his property without due process of law. It is also the considered judgment of this court that the use of the front 300 feet of this parcel for mobile homes would not depreciate the surrouding area. Since a mobile home park does exist at the rear of this parcel and has for many years, it is logical that the entire parcel be used for that purpose. Considering the skyrocketing costs of single-home construction these days and the fact that these costs have placed single-family dwellings beyond the reach of most people, more and more of them are being required to turn to mobile homes. The government has recognized this, and has adopted a generous policy regarding loans for mobile homes.

It is in the public interest to permit the establishment of mobile home parks to alleviate the serious housing shortage with which we are afflicted.

In conclusion, therefore, the court holds that the zoning ordinance under which the front of the plaintiff's parcel of land has been zoned R-1 is unconstitutional, arbitrary, and unreasonable as applied to plaintiff's property. And the court declares the same to be void. A permanent restraining order is granted restraining the defendants from seeking to enforce the R-1 zoning regulations as applied for the first 300 feet of plaintiff's parcel of property.

Regarding the second cause of action, the court finds that there has been an abandonment by the plaintiff of whatever nonconforming use he had previously made of the first 300 feet of his parcel of property.

*Judgment accordingly.*